**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
SHERMAN DIVISION**

| | | |
|---|---|---|
| **NORMA LINDA TREVINO,** | § | |
| | § | |
| **Plaintiff,** | § | |
| | § | |
| **v.** | § | **Civil Action No. 4:21-cv-311-ALM-KPJ** |
| | § | |
| **KILOLO KIJAKAZI,**[1] | § | |
| ***Acting Commissioner of Social Security*,** | § | |
| | § | |
| **Defendant.** | § | |

**REPORT AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Norma Linda Trevino ("Ms. Trevino") brings this appeal under 42 U.S.C. § 405(g) for judicial review of a final decision of the Commissioner of Social Security (the "Commissioner") denying her claim for disability insurance benefits.[2] Having considered the briefs submitted by the parties and the administrative record, the Court recommends the Commissioner's final decision be **REVERSED** and **REMANDED** for further proceedings.

## I.    APPLICABLE LAW

### A.    Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected

---

[1] Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration on July 9, 2021, and is automatically substituted as the defendant in this action. FED. R. CIV. P. 25(d).

[2] The record shows that Ms. Trevino filed applications for both disability insurance benefits and supplemental security income. *See* Tr. 137, 148, 159–60, 183–84, 191–202. The Administrative Law Judge's (the "ALJ") decision, however, only addresses the claim for disability insurance benefits. *See* Tr. 13. Ms. Trevino's briefing raises this point, but does not otherwise argue the ALJ erred in this regard. *See* Dkt. 10 at 2. The Court therefore limits its review to the ALJ's consideration of Ms. Trevino's disability insurance benefits claim.

Case 4:21-cv-00311-ALM-KPJ    Document 15    Filed 08/15/22    Page 2 of 13 PageID #:
1083

to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §

404.1505(a).

When considering a disability application, the Commissioner is required to use a five-step

sequential evaluation process. 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987).

At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not

engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . .

. impairment . . . or a combination of impairments" that has lasted or is expected to last for at least

one year; and (3) the impairment(s) either meet or equal one of the Listings[3] of presumptively

disabling impairments; or (4) the claimant is unable to perform his or her "past relevant work." 20

C.F.R. § 404.1520(a)(4)(i–iv); *Villa v. Sullivan*, 895 F.2d 1019, 1022 (5th Cir. 1990). If the

claimant cannot show that his or her impairment meets or equals a Listing but proves that he or

she is unable to perform his or her "past relevant work," the burden of proof shifts to the

Commissioner, at step five, to show that the claimant is able to perform other work in the national

economy, considering the claimant's residual functional capacity ("RFC"), age, education, and

work experience. *Bowling v. Shalala*, 36 F.3d 431, 435 (5th Cir. 1994); *Graves v. Colvin*, 837 F.3d

589, 592 (5th Cir. 2016) ("The burden of proof is on the claimant for the first four steps but shifts

to the agency at step five; a finding at any step that a claimant is or is not disabled ends the

analysis.").

### B.    Standard of Review

The standard of review in a social security appeal is whether the Commissioner's final

decision[4] "is supported by substantial evidence in the record and whether the proper legal

---

[3] 20 C.F.R. pt. 404, subpt. P, app. 1.

[4] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. § 416.1481, as it is in this case.

standards were used in evaluating the evidence." *Bowling*, 36 F.3d at 434 (quoting *Villa*, 895 F.2d at 1022). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pena v. Saul*, 846 F. App'x 308, 309 (5th Cir. 2021) (internal quotation marks omitted) (quoting *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994)). "[I]t must be more than a scintilla, but it need not be a preponderance." *Leggett v. Chater*, 67 F.3d 558, 564 (5th Cir. 1995) (quoting *Anthony v. Sullivan*, 954 F.2d 289, 295 (5th Cir. 1992)). Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will be found only where there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Bailey v. Saul*, 853 F. App'x 934, 935 (5th Cir. 2021) (quoting *Harrell v. Bowen*, 862 F.2d 471, 475 (5th Cir. 1988)). The Court "may not reweigh the evidence in the record, nor try the issues *de novo*, nor substitute [the Court's] judgment for the [Commissioner's], even if the evidence preponderates against the [Commissioner's] decision." *Bowling*, 36 F.3d at 434 (quoting *Harrell*, 862 F.2d at 475). Rather, evidentiary conflicts are for the Commissioner to decide, and "if a decision is supported by substantial evidence, it must be affirmed even if there is contrary evidence." *Bailey*, 853 F. App'x at 935 (citing *Selders v. Sullivan*, 914 F.2d 614, 617 (5th Cir. 1990)). However, the Court must do more than "rubber stamp" the decision; the Court must "scrutinize the record and take into account whatever fairly detracts from the substantiality of evidence supporting the [Commissioner's] findings." *Cook v. Heckler*, 750 F.2d 391, 393 (5th Cir. 1985).

## II.    BACKGROUND AND PROCEDURAL HISTORY

Ms. Trevino was born in 1971, obtained a GED, and worked at Kohl's until early 2017 as a merchandise stocker and sales associate. *See* Tr. 124, 137, 146, 300–01, 309. On August 30, 2017, Ms. Trevino filed applications for Supplemental Security Income ("SSI") and Disability Insurance Benefits ("DIB"). *See* Tr. 137, 148. In both applications, Ms. Trevino alleged disability since January 1, 2017, due to colon cancer, lupus, kidney failure, diabetes, high blood pressure, depression, chronic fatigue, and liver problems. *See* Tr. 137–38, 148–49. The Social Security Administration ("SSA") denied Ms. Trevino's claims initially on February 15, 2018, and upon reconsideration on April 18, 2018. *See* Tr. 185–88, 191–210. Thereafter, Ms. Trevino filed a written request for a hearing. *See* Tr. 212. On December 2, 2020, Administrative Law Judge Daniel Curran (the "ALJ") held a hearing. *See* Tr. 118–35. The hearing was attended in full by Ms. Trevino and her attorney, and in part by a vocational expert (the "VE"). *See* Tr. 118.

On December 9, 2020, the ALJ issued a partially favorable decision on Ms. Trevino's DIB claim. *See* Tr. 9–21. In his decision, the ALJ found that Ms. Trevino met the insured status requirements of the Social Security Act (the "Act") through December 31, 2021. *See* Tr. 15. At step one, the ALJ found that Ms. Trevino had not engaged in substantial gainful activity since her alleged onset date. *Id*. At step two, the ALJ found that since the alleged onset date, January 1, 2017, Ms. Trevino had the following severe impairments: coronary artery disease, liver disease, and joint dysfunction. *See* Tr. 15. The ALJ determined that Ms. Trevino's medically determinable impairments of hypertension, diabetes mellitus, and lupus were non-severe impairments. *See* Tr. 16. The ALJ further determined that Ms. Trevino's alleged impairments of cancer and depression did not rise to the level of medically determinable impairments. *See id.* At step three, the ALJ found that none of Ms. Trevino's impairments, alone or in combination, met or medically equaled

a Listing. *See* Tr. 16. Because the ALJ found that none of the impairments met a Listing, the ALJ

assessed Ms. Trevino's RFC. *See* Tr. 16–19. The ALJ found Ms. Trevino had the RFC to "perform

the full range of sedentary work as defined in 20 CFR 404.1567(a)." *See* Tr. 16.

At step four, the ALJ found that Ms. Trevino was unable to perform her past relevant work

as a stocker since the alleged onset date of January 1, 2017. *See* Tr. 19. The ALJ next found that

on November 30, 2020, Ms. Trevino's age category changed to "an individual closely approaching

advanced age." *Id.* At step five, the ALJ determined that prior to November 30, 2020, considering

Ms. Trevino's age, education, work experience, and RFC, there were jobs that existed in significant

numbers in the national economy she could perform. *See* Tr. 19–20. Beginning on November 30,

2020, the date Ms. Trevino's age category changed, the ALJ found Ms. Trevino disabled upon

application of Medical-Vocational Rule 201.14.[5] *See* Tr. 20. The ALJ concluded Ms. Trevino "was

not disabled prior to November 30, 2020, but became disabled on that date and has continued to

be disabled through the date of this decision." *Id*.

Ms. Trevino subsequently requested that the Appeals Council review the ALJ's

unfavorable decision. *See* Tr. 268–70. On February 23, 2021, the Appeals Council denied the

request for review. *See* Tr. 1–5. Therefore, the ALJ's decision became the Commissioner's final

decision. *See Sims v. Apfel*, 530 U.S. 103, 106–07 (2000); 42 U.S.C. § 405(g). Ms. Trevino timely

filed her appeal to this Court on April 19, 2021.[6] *See* Dkt. 1.

### III.   ANALYSIS

Ms. Trevino raises four arguments on appeal. First, she contends the ALJ violated SSA's

internal procedures by having the VE testify at the beginning of the hearing, without having heard

---

[5] 20 C.F.R. pt. 404, subpt. P, app. 2.

[6] A claimant has sixty days to file an appeal. The sixty days begins running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* Tr. 3.

Ms. Trevino's testimony or a summary of her testimony. *See* Dkt. 10 at 4–6. Second, Ms. Trevino argues the ALJ erred in finding that Ms. Trevino did not have any medically determinable mental impairments, including, specifically, depression. *See id.* at 6–10. Third, Ms. Trevino claims the ALJ erred by failing to consider Ms. Trevino's need for a cane or walker for ambulation, and relatedly, the ALJ erred by not adopting any manipulative limitations in the RFC. *See id.* at 11– 13. Fourth, Ms. Trevino raises a separation of powers challenge, which she contends the Court must not address unless necessary to resolve this case. *See id.* at 13–16; *see also* Dkt. 14 at 5 n.1. As set forth below, the Court finds Ms. Trevino's first two arguments are meritorious and accordingly, the Court does not reach Ms. Trevino's remaining two arguments.

### A. The VE's Testimony

Ms. Trevino argues the ALJ violated the SSA's internal procedures by having the VE testify at the beginning of the hearing without first hearing Ms. Trevino's testimony or a summary of her testimony. *See* Dkt. 10 at 4–6. Ms. Trevino relies on a specific provision of the SSA's internal manual called the Hearings, Appeals, Litigation Law Manual ("HALLEX"), Section I-2-6-74(B). "While other courts have held HALLEX not binding on the Commissioner, the Fifth Circuit utilizes the following stringent standard: while HALLEX does not carry the authority of law, where the rights of individuals are affected, an agency must follow its own procedures, even where the internal procedures are more rigorous than otherwise would be required." *See Morgan v. Colvin*, 803 F.3d 773, 777 (5th Cir. 2015) (cleaned up) (citing *Newton v. Apfel*, 209 F.3d 448, 459 (5th Cir. 2000)). "[I]f prejudice results from a violation, the result cannot stand[.]" *Id.*

Section I-2-6-74 of HALLEX covers vocational expert testimony, with subsection B providing that:

> At the hearing, the ALJ must advise the claimant of the reason for the VE's presence and explain the procedures all participants will follow.

> *The VE may attend the entire hearing, but this is not required. If the VE was not present to hear pertinent testimony, such as testimony regarding past relevant work or educational background, the ALJ will summarize the testimony for the VE on the record.*
>
> All VE testimony must be on the record. After administering the oath or affirmation, the ALJ must (on the record):
>> Ask the VE to confirm his or her impartiality, expertise, and professional qualifications;
>> Verify the VE has examined all vocational evidence of record;
>> Ask the claimant and the representative whether they have any objection(s) to the VE testifying; and
>> Rule on any objection(s). The ALJ may address the objection(s) on the record during the hearing, in narrative form as a separate exhibit, or in the body of his or her decision.

*See* HALLEX § I-2-6-74(B) (emphasis added). At the December 2, 2020 telephonic hearing, the

ALJ began the hearing with the following exchange with Ms. Trevino's attorney:

> ALJ:    Okay. Counsel, what I'd like to do if it's acceptable is to question the vocational expert and release him because he's got other work to do.
>
> Atty:   Okay.

Tr. 120. Then, after both Ms. Trevino and the VE were sworn in, the ALJ proceeded directly to

questioning the VE as follows:

> ALJ:    Mr. Bowden [VE], could you describe [Ms. Trevino's] past relevant work? Or actually past work. We'll have to make a finding whether it's relevant.
>
> VE:     All right. The records indicate she was a stocker, S-T-O-C-K-E-R, and that's 922.687-058, SVP: 2, unskilled and medium. And that's her past work.
>
> ALJ:    Okay. So it's unskilled so there would be no skills transferable obviously to a sedentary type work?
>
> VE:     That's [sic] is correct.

Tr. 121. At this point, the ALJ asked Ms. Trevino's attorney if he wanted to cross-examine the

VE, which the attorney proceeded to do by posing a hypothetical to the VE. *See* Tr. 121–22. The

ALJ then asked the VE to disconnect the call, after which the ALJ heard opening remarks from Ms. Trevino's attorney and began taking Ms. Trevino's testimony. *See* Tr. 122.

On appeal, Ms. Trevino argues the VE's testimony above violates HALLEX § I-2-6-74(B). The Court agrees. First and foremost, because the VE testified before Ms. Trevino, the VE did not hear any "pertinent testimony, such as testimony regarding [Ms. Trevino's] past relevant work or educational background." *See* HALLEX § I-2-6-74(B). Nor could the VE have been given a summary of Ms. Trevino's testimony, as she had not yet testified. *See id.* (stating that if the VE was not present to hear pertinent testimony, the ALJ should summarize the testimony for the VE on the record). Second, although the VE testified that the "records" showed Ms. Trevino's past work as a stocker, the ALJ never asked the VE whether he had examined all of the vocational evidence of record. And even if the VE had done so, the VE was not present for Ms. Trevino's testimony that her work history records were not entirely accurate because she was a victim of identity theft. *See* Tr. 124–25 (addressing a new hire report in the record, which showed employment and earnings after the onset date, that Ms. Trevino testified were due to onset date). Third, the ALJ did not provide Ms. Trevino any of the information that is customarily provided to claimants prior to a VE's testimony, such as advising her of the reason for the VE's presence.

While the Commissioner does not dispute that the ALJ failed to follow the requirements of Section I-2-6-74(B), the Commissioner contends Ms. Trevino has waived any error because her counsel acquiesced to the ALJ's request that the VE testify first. *See* Dkt. 13 at 5. The Commissioner does not point to, nor is the Court aware of, any authority authorizing waiver of this particular HALLEX provision. *Cf.* HALLEX § I-2-1-80 (expressly providing for waiver of claimant's right to representation at the hearing). Thus, the Court will proceed directly to considering whether the HALLEX error resulted in prejudice. *See Morgan v. Colvin*, 803 F.3d

8

773, 777–78 (5th Cir. 2015) (HALLEX violation is grounds for reversal where claimant establishes prejudice due to the violation). As to prejudice, the Commissioner maintains that Ms. Trevino cannot show prejudice because VE testimony was not necessary in this case. *See* Dkt. 14 at 4–5. According to the Commissioner, because the ALJ assessed an RFC with only exertional limitations, the ALJ did not need to rely on VE testimony, as Medical-Vocational Rule 201.21 dictated a finding that Ms. Trevino was not disabled prior to November 30, 2020, the date when her age category changed. *Id.*; *see Selders v. Sullivan*, 914 F.2d 614, 618 (5th Cir. 1990) ("When the claimant suffers only from exertional impairments or his non-exertional impairments do not significantly affect his residual functional capacity, the ALJ may rely exclusively on the Guidelines in determining whether there is other work available that the claimant can perform."). The Commissioner's argument might have been persuasive had the ALJ not explicitly stated in his decision that he relied on the VE's testimony because Medical-Vocational Rule 201.21 was inapplicable:

> Prior to November 30, 2020, if [Ms. Trevino] had the residual functional capacity to perform the full range of sedentary work, a finding of "not disabled" would be directed by Medical-Vocational Rule 201.21. *However, [Ms. Trevino's] ability to perform all or substantially all of the requirements of this level of work was impeded by additional limitations. To determine the extent to which these limitations eroded the unskilled sedentary occupational base, the [ALJ] asked the vocational expert whether jobs exist in the national economy for an individual with [Ms. Trevino's] age, education, work experience, and residual functional capacity.*

Tr. 20 (emphasis added). Thus, the Commissioner is incorrect that the ALJ applied Medical-Vocational Rule 201.21 for the time period before Ms. Trevino's age category changed. See Dkt. 13 at 5. The above language is problematic for two other reasons—first, although the ALJ indicated that Ms. Trevino's ability to perform the full range of sedentary work was "impeded by additional limitations," the ALJ did not specify what additional limitations were present. Second, and more critically, contrary to what is stated in the decision, the ALJ never asked the VE whether jobs

9

existed in the national economy for an individual with Ms. Trevino's age, education, work experience, and RFC. The ALJ went even further, explicitly finding that "there *were* jobs that existed in significant numbers in the national economy that [Ms. Trevino] could have performed." *See* Tr. 19 (emphasis jobs). But it is unclear what these jobs were because the VE was never asked to identify jobs during the hearing.[7] The ALJ's incorrect representations of the VE's testimony in the decision, coupled with the HALLEX error, raise a reasonable possibility that the ALJ might have reached a different conclusion. Thus, the Court finds it was prejudicial to Ms. Trevino that the VE testified without the benefit of hearing her testimony. Accordingly, remand is warranted on this issue.

### B.  Existence of Medically Determinable Mental Impairments

Next, Ms. Trevino argues the ALJ erred in concluding that Ms. Trevino's alleged depression was not a medically determinable impairment. *See* Dkt. 10 at 6–10. Agency regulations provide that a medically determinable impairment results from "anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques." *See* 20 C.F.R. § 404.1521. "[A] physical or mental impairment must be established by objective medical evidence from an acceptable medical source." *Id.* Further, the ALJ "will not use [the claimant's] statement of symptoms, a diagnosis, or a medical opinion to establish the existence of an impairment(s)." *Id.*

In his decision, the ALJ stated that he considered Ms. Trevino's allegations of depression, but did not find any "test [in the record] . . . indicating . . . depression." *See* Tr. 16; *see also* Tr. 18 (ALJ stating that he "reviewed all the medical evidence of record and could not find [any] test or diagnosis indicating cancer and depression."). The ALJ also noted that a state agency psychiatric

---

[7] The record also does not appear to contain any post-hearing interrogatories submitted to the vocational expert.

examiner found in January 2018, that "the medical evidence of record [at that point] d[id] not reveal a mental medically determinable impairment." *See* Tr. 17. Upon review of the record, the Court concludes the ALJ overlooked considerable objective medical evidence substantiating Ms. Trevino's allegations that she suffered from depression. *See, e.g.*, Tr. 841–43 (April 9, 2019 health and behavioral assessment diagnosing Ms. Trevino with "Major Depressive Disorder with psychotic features, by history; Complex Trauma, chronic PTSD"); Tr. 850 (April 19, 2019 office visit where Ms. Trevino presented with flat affect); Tr. 863 (May 2019 visit where Ms. Trevino exhibited a depressed mood); Tr. 866–71 (May 2019 behavioral health assessment which included: (1) mental status examination showing unkempt appearance, flat affect, depressed mood, not oriented to place, and short-term memory; (2) a GAF assessment of 50–55; and (3) prescriptions for medications to treat psychiatric conditions, including Zoloft and Prazosin); Tr. 904–61 (treatment records from 2017 through 2020 showing medical providers routinely prescribed or continued medications to treat anxiety and depression). The Court cannot reconcile this evidence in the record with the ALJ's statement that he could not find any test in the record indicating depression.

The Commissioner nonetheless argues remand is not warranted on this issue because there is no record evidence that Ms. Trevino's depression interferes with her ability to work. But "the ALJ's decision must stand or fall with the reasons set forth in the . . . decision." *Newton*, 209 F.3d at 455. And where the reasons or explanation set forth in the decision are inadequate, "the [C]ourt is powerless to affirm the administrative decision by substituting what it considers to be a more adequate or proper basis." *SEC v. Chenery*, 332 U.S. 194, 196 (1947). Here, the ALJ troublingly and incorrectly stated there was no objective medical evidence diagnosing Ms. Trevino with depression. At no point in his decision did the ALJ articulate his reasons for disregarding the

11

evidence detailed above. The ALJ has a responsibility "to adequately explain [his] reasoning in making the findings on which [his] ultimate decision rests, and in doing so must address all pertinent evidence." *Gonzalez v. Berryhill*, No. 3:16-cv-1830, 2017 WL 3492215, at \*6 (N.D. Tex. August 17, 2017). Had the ALJ reviewed the medical evidence post-dating the state agency psychiatric examination, he would have seen that Ms. Trevino alleged symptoms of ongoing depression over the course of several years. Acceptable medical sources evaluated her and noted psychiatric abnormalities during examinations, which suggests Ms. Trevino had medically determinable depression. In addition, the fact that Ms. Trevino's depression was treated with prescription medications and therapy also suggests the presence of a medically determinable impairment. *See Scroggins v. Astrue*, 598 F. Supp. 2d 800, 803 (N.D. Tex. 2009) (finding the treating doctor's refilling of prescription medication provided evidence indicating a medically determinable impairment). The ALJ failed to account for this pertinent evidence in his analysis, and as such, the error was not harmless. Accordingly, the ALJ's determination that Ms. Trevino's depression was not a medically determinable impairment is not supported by substantial evidence or the applicable law.

## IV.   <u>RECOMMENDATION</u>

For the foregoing reasons, the Court recommends that the Commissioner's decision be **REVERSED** and **REMANDED** for further proceedings.

Within fourteen (14) days after service of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C. § 636(b)(1)(C).

A party is entitled to a *de novo* review by the district court of the findings and conclusions contained in this report only if specific objections are made, and failure to timely file written

objections to any proposed findings, conclusions, and recommendations contained in this report

shall bar an aggrieved party from appellate review of those factual findings and legal conclusions

accepted by the district court, except on grounds of plain error, provided that the party has been

served with notice that such consequences will result from a failure to object. *Id.*; *Thomas v. Arn*,

474 U.S. 140 (1985); *Douglass v. United Servs. Auto Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996)

(en banc), *superseded by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to

file objections from ten (10) to fourteen (14) days).


**So ORDERED and SIGNED this 15th day of August, 2022.**

_____
KIMBERLY C. PRIEST JOHNSON
UNITED STATES MAGISTRATE JUDGE